# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAVIER LOPEZ CASTRO**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**, *et al.*,<br><br>Defendants. | Civil Action No. 13-818 (JEB) |

## MEMORANDUM OPINION

Plaintiffs are laborers who worked for a third-tier subcontractor in the construction of a District of Columbia building. Believing that they were underpaid, they brought this action on May 31, 2013, against the two companies insuring the prime contractor's construction-payment bond, alleging violations of the federal Davis-Bacon Act and the District of Columbia's Little Miller Act. On June 24, Defendants filed Motions to Dismiss, arguing, *inter alia*, that the statute of limitations on Plaintiffs' claims has expired and that Plaintiffs do not qualify for coverage under Defendants' bonds. Although Defendants did not mention a lack of subject-matter jurisdiction, the Court raised the issue *sua sponte* in an Order on September 18, requiring that Plaintiffs show cause why the case should not be dismissed for their failure to sufficiently exhaust administrative remedies, as required by the Davis-Bacon Act, 40 U.S.C. § 3144(a).

After several rounds of briefing, Plaintiffs successfully requested that the Court stay the proceedings, allowing them to return to the Department of Labor to complete the administrative process. Plaintiffs now report that, despite their entreaties, DOL has refused to take any further action. They thus ask the Court to revisit its earlier findings on subject-matter jurisdiction in

1

light of their repeated efforts to obtain administrative relief. The Court is persuaded, and it now agrees that it may hear the case.

## I.     Background

Plaintiffs were employed by S & J Acoustics, a third-tier subcontractor retained to complete ceiling installation on the Consolidated Forensic Laboratory building, owned by the District of Columbia. See Compl., ¶¶ 2, 5. Pursuant to the Davis-Bacon Act (DBA), 40 U.S.C. § 3141, *et seq.*, and the Little Miller Act, D.C. Code § 2-201.01, *et seq.*, the project's prime contractor, Whiting-Turner, provided a payment bond to the District of Columbia as an assurance that project laborers would receive payment at DOL-mandated hourly rates. See Compl., ¶¶ 3, 8. Defendants Fidelity and Deposit Company of Maryland and Travelers Casualty and Surety Company of America guaranteed the bond as co-sureties. See id. Plaintiffs now seek to collect against that bond, alleging that they were not paid for their contributions to the project in accordance with the designated wage rates. See id., ¶¶ 21, 28-29.

Prior to initiating this action, Plaintiffs filed an administrative complaint with DOL, requesting that payments to the project's prime contractor be withheld until an investigation could be completed and Plaintiffs compensated for the alleged back wages. See id., ¶¶ 23-24. As the project had since been wound up and all payments released to the prime contractor, the DOL investigator closed the case without making further findings on Plaintiffs' eligibility for relief under the DBA. See id., ¶¶ 24-25. Although neither party mentioned the issue in their initial briefs, the Court *sua sponte* raised questions about its subject-matter jurisdiction to proceed, absent conclusive findings from DOL. See Order to Show Cause at 2-5.

Relying on the language of § 3144(a) of the DBA, as well as opinions from a handful of other jurisdictions, the Court reasoned that Plaintiffs could demonstrate statutorily required

2

exhaustion of administrative remedies only after DOL had made three factual determinations –
namely, (1) that Plaintiffs had performed DBA-eligible work, (2) that they had been paid below
the required DBA wage, and (3) that DOL had not withheld sufficient funds from the project to
remedy these underpayments. See OSC at 2-3. Plaintiffs responded that, although they had
attempted to comply with the administrative requirements of § 3144(a), DOL had dismissed the
case on the ground that "the government had already made its final payment to the prime
contractor . . . and that therefore there were no further payments the government could
withhold." See Response at 1. Given the lack of funds, DOL saw no need to further investigate
Plaintiffs' DBA eligibility or the extent of any back wages owed. See id.

Out of deference to DOL's plenary responsibility under the DBA to make back-wage
determinations, but also to avoid leaving Plaintiffs without an effective remedy, the Court opted
to issue a temporary stay of the proceedings to allow Plaintiffs to return to DOL and request that
the agency reopen the case and make the remaining administrative determinations. See ECF No.
16 (Order) at 4. Plaintiffs have done so, but without any success. Both parties stipulate to the
fact that DOL refuses to reopen the case, presenting DOL "Case Conclusion Notes" as proof that
the complaint has been definitively dismissed for lack of any remaining funds. See Joint Status
Report, ¶¶ 6-7 & Exh. A.

Plaintiffs now urge the Court to nevertheless assert jurisdiction in this matter and allow
them to move ahead with their claims under DBA § 3144(a) and the Little Miller Act, lest they
be without a remedy. See Response at 9; see also, e.g., Ibrahim v. Mid-Atl. Air of DC, LLC, 802
F. Supp. 2d 73, 76 (D.D.C. 2011) (recognizing that plaintiff would likely be foreclosed from
bringing claim under D.C. contract law where contract relates to project governed by DBA),
aff'd, 11-7150, 2012 WL 3068460 (D.C. Cir. July 19, 2012). Defendants, however, argue that

DOL's failure to make a complete set of findings under § 3144(a) creates an insurmountable barrier to federal-question jurisdiction. See Def. Resp. to Order at 2. The Court's prior Order may have too stringently accepted the position taken by Defendants, and the Court now believes that such a conclusion – which risks exalting form over substance – is neither compelled by the language and purpose of § 3144(a) nor appropriate in light of the unusual circumstances in this case, particularly now that Plaintiffs have again unsuccessfully pled their case to DOL. The Court will thus grant Plaintiffs' request and find that it has subject-matter jurisdiction under the DBA to address their claims.

## II. Analysis

The DBA, "a minimum wage law designed for the benefit of construction workers," United States v. Binghamton Const. Co., 347 U.S. 171, 178 (1954), offers a limited cause of action for laborers against contractor sureties to recover unpaid wages, providing:

> (1) In general. – The Secretary of Labor[1] shall pay directly to laborers and mechanics from any accrued payments withheld under the terms of a contract any wages found to be due laborers and mechanics under this subchapter.
>
> (2) Right of action. – If the accrued payments withheld under the terms of the contract are insufficient to reimburse all the laborers and mechanics who have not been paid the wages required under this subchapter, the laborers and mechanics have the same right to bring a civil action and intervene against the contractor and the contractor's sureties as is conferred by law on persons furnishing labor or materials. . . .

40 U.S.C. § 3144(a).

As this Court has acknowledged, § 3144(a) "could be read to mean that the right of action does not accrue – and thus that the courts do not have jurisdiction – until [] the Department of Labor has made a determination that [1] the laborer performed DBA-eligible work [2] but was

---

[1] As of November 21, 2013, § 3144(a) was amended, vesting the Secretary of Labor, instead of the Comptroller General, with responsibility for payment of back wages. See Pub.L. 113-50 (2013).

4

not paid a DBA-compliant wage, and that [3] the funds available to be withheld from the contractor are insufficient to compensate the laborer for his underpayment." OSC at 2. Indeed, several decisions, including one in this District, have suggested that DOL determinations as to non-payment and insufficiency of funds constitute jurisdictional conditions precedent to any action against a surety in district or state court. See, e.g., Johnson v. Prospect Waterproofing Co., 813 F. Supp. 2d 4, 7 (D.D.C. 2011) (quoting U.S. ex rel. Bradbury v. TLT Const. Corp., 138 F. Supp. 2d 237, 241 (D.R.I. 2001)); Ybanez v. Anchor Constructors, Inc., 489 S.W.2d 730, 738 (Tex. Civ. App. 1972).

The District of Rhode Island's decision in Bradbury offers the strictest reading of the DBA's jurisdictional requirements, characterizing the § 3144 remedy as "available only after there has been an administrative determination that some money is owed and that insufficient funds have been withheld to compensate the affected laborer." Bradbury, 138 F. Supp. 2d at 241. The plaintiff in Bradbury, however, did not rely upon § 3144 to establish jurisdiction, but instead claimed that the federal Miller Act afforded a wholly independent cause of action that could be exercised separately from any of the DBA's formalities. See id. at 239. In fact, he made no attempt to seek administrative redress in accordance with the procedures set out in § 3144. See id. at 244. The holding in Bradbury, as a consequence, may be of limited value for cases like this one, where the Plaintiffs have made a good-faith effort to exhaust administrative remedies.

Other courts that have employed this three-pronged jurisdictional formula have similarly done so in response to a plaintiff's perceived attempt to "bypass the exclusive administrative remedies of the DBA" by resorting to an implied cause of action or a state-law contract claim. See Johnson, 813 F. Supp. 2d at 10; Ybanez, 489 S.W.2d at 738-39. Indeed, the majority of

prior decisions have examined the § 3144(a) remedy only to the extent that it forecloses a plaintiff from making an "end-run" around the DBA's administrative scheme. See, e.g., Ibrahim, 802 F. Supp. 2d at 76 (plaintiff cannot "evade the requirement that he seek administrative relief simply by arguing that his claims arise under D.C. law"); U.S. for Use and Benefit of Glynn v. Capelletti Bros., Inc., 448 F. Supp. 66, 68 (S.D. Fla. 1978) (plaintiff barred from seeking judicial relief while DOL administrative investigation still ongoing); Ybanez, 489 S.W.2d at 737-38 (no implied cause of action to challenge improper wage classification).

None of these opinions, however, addressed the more difficult question of whether an affected employee may properly claim to have exhausted all remedies under § 3144 once DOL closes an investigation for lack of sufficient funds and refuses to make any further findings on remaining wages owed. Indeed, none involved a plaintiff who sought the assistance of the courts as a measure of last resort, only after making best efforts to obtain administrative assistance.

In this case, Plaintiffs have made not one, but two, separate demands on DOL, requesting full findings on their eligibility for DBA protections and on the status of any back wages owed under the contract, and DOL has refused to take any further action. See Joint Status Report at 1-2. In light of the unusual facts of this case, finding that exhaustion has been completed is more consistent with the goals of § 3144(a).

The primary purpose of the DBA is "not [] to benefit [government] contractors, but rather to protect their employees from substandard earnings." Binghamton Const. Co., 347 U.S. at 177. To support this goal, the Act confers an express "right of action on employees to recover from the contractor the amount due the employees under the minimum wage schedule." Id. at 176 n.12. The Supreme Court has observed that the Act's administrative scheme is designed to strike a "careful balance" by providing contractors with a predictable basis upon which to

6

estimate labor costs, and laborers with an effective means to enforce wage stipulations in contracts.  See Univs. Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 782 (1981); see also id. at 776-77 ("Congress intended to give laborers and mechanics only 'the same right of action against the contractor and his sureties in court which is now conferred by the [Miller Act].'") (quoting S. Rep. No. 1155, at 2; H.R. Rep. No. 1756, at 2).  While Congress may have "concluded that the administrative process will regulate compliance with the statute more efficiently than the courts could through piecemeal litigation," Bradbury, 138 F. Supp. 2d at 244, it does not necessarily follow that Congress intended to deny a laborer any means of redress once a DOL investigator has closed an investigation for lack of sufficient funds and has refused to make any further findings on wages owed.

When interpreting a statute designed to benefit laborers, federal courts have consistently taken a more liberal approach to construction with a view to ensuring that workers are properly compensated for their contributions to public projects.  See, e.g., Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co., 322 U.S. 102, 104 (1944) (counseling liberal construction where statute "clearly evidence[s] 'the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work.'") (quoting U.S. for the Use & Benefit of Daniel H. Hill v. Am. Surety Co., 200 U.S. 197, 202-03 (1906)); U.S. to Use & Benefit of Bailey-Lewis-Williams of Fla., Inc. v. Peter Kiewit Sons Co. of Canada Ltd., 195 F. Supp. 752, 756 (D.D.C. 1961) (where literal meaning of words leads to results at variance with statute's legislative goals, courts should follow legislative purpose), aff'd sub nom. Indem. Ins. Co. of N. Am. v. U.S. to Use & Benefit of Bailey-Lewis-Williams of Fla., Inc., 299 F.2d 930 (D.C. Cir. 1962); U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enterprises, Inc., 509 F.3d 184, 186 (3d Cir. 2007) (interpretation should promote Congressional intent to protect those whose

7

labor and materials contribute to public projects); U.S. for Use & Benefit of T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 950 n.9 (5th Cir. 1991). In order to preserve the DBA's "careful balance" while fulfilling its primary purpose of protecting laborers, the § 3144(a) remedy should not be construed so expansively that it permits laborers to opt out of the administrative process or so narrowly that it places the laborer at the mercy of circumstances beyond his control.

As Plaintiffs point out, furthermore, a number of other opinions have not insisted on the formulaic fulfillment of all three Bradbury prerequisites, but have instead focused principally on the requirement that employees allege that they made a demand on DOL, but were unable to collect due to insufficient funds. See Response at 7-9. The Ninth Circuit, for example, determined that the major barrier to jurisdiction was a plaintiff's failure to allege that "that the Comptroller General withheld insufficient funds." Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 676 (9th Cir. 1998). Another court similarly reasoned that it could not assert jurisdiction unless the plaintiff demonstrated that the government had "withheld insufficient payments from the contractor and, therefore, was unable to reimburse laborers and mechanics pursuant to the contractor's contract." Weber v. Heat Control Co., 579 F. Supp. 346, 348 (D.N.J. 1982), aff'd, 728 F.2d 599 (3d Cir. 1984). Yet another court held that the central "condition precedent" that a plaintiff must meet before establishing jurisdiction over a DBA claim is the existence of "a demand on the [Secretary of Labor], and a refusal by him to pay." Veder v. Bay State Dredging & Contracting Co., 79 F. Supp. 837, 840 (D. Mass. 1948). In other words, the government "must at least have the opportunity to make a preliminary determination" before an employee turns to the courts. See id.

While none of these opinions is binding on this Court or addresses the precise factual circumstances of this case, the Court finds them persuasive inasmuch as they emphasize the most important criteria for jurisdiction over a DBA claim – namely, that the plaintiff first make a concerted effort to exhaust administrative remedies with DOL and only turn to the courts if funds are found to be insufficient. To refuse jurisdiction, even after a plaintiff has twice made a good-faith effort to obtain administrative relief, would be overly technical and risk undermining the very purpose of the DBA and corresponding bond statutes.

Such a formalistic approach to jurisdiction, moreover, could result in unfortunate outcomes not likely intended by the DBA's drafters. As several past opinions have demonstrated, courts have been hesitant to permit a plaintiff to assert an independent state-law claim for breach of contract where the claim was factually dependent on the contractor's DBA obligation to pay a pre-determined wage. See, e.g., Ibrahim v. Mid-Atl. Air of DC, LLC, 802 F. Supp. 2d 73, 76 (D.D.C. 2011) (breach-of-contract claim dismissed on ground that it constituted an "indirect attempt[] at privately enforcing the [DBA's] prevailing wage schedules") (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (internal quotation marks omitted in original); Johnson, 813 F. Supp. 2d at 10 (plaintiffs "cannot get around the administrative prerequisites of the Act simply by dressing up their claim" as a state-law contract claim). A rigid approach to § 3144(a) jurisdiction, as a consequence, might mean that a genuinely aggrieved employee could not pursue <u>any</u> avenue to recovery unless DOL makes a full set of administrative findings. In addition, refusal to entertain DBA claims in situations like this one may create a perverse incentive for contractors to breach their wage obligations at the end of a project's lifespan, in hopes that employees will not report the problem until after final payments have been made and any withholdings have been released.

In light of both the object and purpose of the DBA, and the special circumstances of this case, the Court finds that Plaintiffs have sufficiently exhausted their administrative remedies under DBA § 3144(a), and that refusal by DOL to reopen its investigations should not create an insurmountable barrier to this Court's jurisdiction and Plaintiffs' ability to seek the remedies intended under the statute.

## III.    Conclusion

For the foregoing reasons, the Court finds that it has proper subject-matter jurisdiction to review the substance of Plaintiffs' claims. A contemporaneous Order will so indicate. The Court will now proceed to consider the merits of Defendants' pending Motions to Dismiss, which will be addressed in a future Opinion.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 7, 2014